IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

FILED
2015 MAR 11 A 11: 26

| | |
|---|---|
| GLOBAL AEROSPACE, INC., | ) |
| Plaintiff, | ) |
| v. | ) Case No. 3:15-cv-105 |
| PHILLIPS & JORDAN, INC., | ) Reeves/Shirley |
| Defendant. | ) |

## COMPLAINT

COMES NOW Plaintiff Global Aerospace, Inc. ("Global") and for its Complaint against Phillips & Jordan, Inc. ("Phillips & Jordan") states and alleges:

### Parties

1. Global is a Delaware corporation with a home office located at One Sylvan Way, Parsippany, New Jersey, 07054.

2. Phillips & Jordan is a North Carolina corporation with a home office located at 10201 Parkside Dr., Ste. 300, Knoxville, TN 37922-1983.

### Jurisdiction and Venue

3. Jurisdiction is proper in this Court pursuant to 28 U.S.C. §1332, because this is a controversy between citizens of different states, and the amount in controversy is greater than $75,000.00 exclusive of interest and costs.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, in that Defendant Phillips & Jordan resides in this district, and a substantial part of the events giving rise to the causes of action stated herein occurred in this district.

1

## Nature of the Action

5. Global files this action to seek a declaratory judgment that the policy of insurance issued to Phillips & Jordan thru Global provides a valid appraisal process which includes the appointment of an umpire, and seeks an order compelling appraisal.

## Factual Allegations

6. Phillips & Jordan purchased a certain Broad Horizons Aviation Insurance Policy, No. 15000291, for the policy period June 1, 2014 to June 1, 2015 (the "Policy"). A copy of the Policy is attached hereto as Exhibit 1.

7. The Policy insured Phillips & Jordan's 2004 Beech Premier I airplane, N73PJ ("Aircraft") against physical damage to the Aircraft. Subject to the terms of the Policy, if the "cost to repair" the Aircraft is less than the "insured value" of the Aircraft, Global is required to pay for the "cost to repair" the Aircraft.

8. The Policy provides, in material part:

**LIMITS OF LIABILITY**
(APPLICABLE TO ALL PART III COVERAGES)

1. In the event of a *total loss* [Global] shall pay the *insured value* of the *scheduled aircraft* less any applicable deductible whereupon [Global's] liability as respects to such *scheduled aircraft* shall terminate.

2. In the event of a *partial loss* [Global's] liability shall not exceed the *cost to repair* the *scheduled aircraft*, less any applicable deductible, but in no event shall [Global's] liability for a *partial loss* exceed the amount for which [Global] would be liable if the *scheduled aircraft* were a *total loss*.

* * *

4. **Appraisal.**

If [Phillips & Jordan] and [Global] fail to agree as to the *cost to repair* the *physical damage*, either may, within sixty (60) days after proof of loss is

2

filed, demand an appraisal. In such event, [Phillips & Jordan] and [Global] shall each select a competent appraiser, and the appraisers shall select a competent and disinterested umpire. The appraisers shall appraise the *cost to repair* the *physical damage* and failing to agree shall submit their differences to the umpire. An award in writing of any two (2) shall determine the *cost to repair* the *physical damage*. [Phillips & Jordan] and [Global] shall each pay its chosen appraiser and shall bear equally the other expenses of the appraisal and umpire. [Global] shall not be held to have waived any of its rights by any act relating to appraisal.

\* \* \*

*"Cost to repair"* means the sum of the cost, where necessary, of transporting new or damaged parts or of transporting the damaged *scheduled aircraft, spare engine(s), spare part(s)* or *mechanics' tools* to the place of repair and return to the place of accident or home airport or heliport, whichever is nearer, by the least expensive reasonable means and

(a) if repairs are made by [Phillips & Jordan]

    (1) the actual cost of materials and parts of like kind and quality,

    (2) actual straight time wages paid for labor, and

    (3) reasonable overhead; or

(b) if repairs are not made by [Phillips & Jordan], the actual cost of repairing the damaged property with materials and parts of like kind and quality with charges for labor at straight time rates.

\* \* \*

*"Insured Value"* means:

(a) as respects any *scheduled aircraft* which is described in Item 4 of the Declarations:

the amount shown as part of the description of the aircraft; or

(b) as respects any *scheduled aircraft* which is a *newly acquired aircraft*:

    (1) if purchased by [Phillips & Jordan], the actual cost of the aircraft to [Phillips & Jordan], or

3

(2) if leased to [Phillips & Jordan], the amount for which [Phillips & Jordan] is responsible as set forth in the lease,

provided, however, that sub-sections (b) (1) and (2) above are subject to the maximum allowable amount set forth in Item 3 of the Declarations as part of the Company's Limit of Liability for Coverage L.

* * *

*"Partial Loss"* means *physical damage* which is not a *total loss*.

* * *

*"Physical Damage"* means direct and accidental physical loss of or damage to the **scheduled aircraft, spare engine, spare part or mechanics' tools**, but does not include loss of use or any residual decrease in value after repairs have been made.

* * *

*"Total Loss"* means *physical damage* for which the *cost to repair* equals or exceeds the *insured value* of the *scheduled aircraft*.

* * *

9. The "Policy" states that the "Insured Value" of the Aircraft is $3,500,000.

10. On or about September 30, 2014, the Aircraft sustained damage while landing in Knoxville, TN when a tire blew on the left main landing gear. This resulted in damage to the left main landing gear and left wing.

11. On November 18, 2014, Phillips & Jordan filed a Proof of Loss, enclosing a letter dated October 30, 2014. The letter stated the repair costs were in excess of $3,700,000. Since the Aircraft has an "Insured Value" of $3,500,000, the Aircraft was a total loss and Phillips & Jordan made demand for payment in the amount of $3,500,000.

4

12. The repair costs of $3,700,000 was based on the replacement of the left main landing gear and replacement of the left wing with a $3,500,000 new wing from the manufacturer Hawker Beechcraft Corporation ("HBC").

13. Two alternate repair proposals were obtained. Both of these alternate repair proposals utilized a comparable serviceable wing with similar flight hours and cycles as Phillips & Jordan's aircraft rather than utilizing a new factory wing with zero flight hours and cycles. Emery Air, Inc. which operates a Class IV Repair Station and is a HBC and Williams (the aircraft engines) authorized service center provided a repair estimate in the amount of $989,835. The aircraft manufacturer, HBC, also provided an estimate to install a serviceable wing in the amount of $1,177,677. Both repair proposals were pursuant to the manufactures maintenance manual and included all and requisite inspections to return the aircraft to an airworthy condition.

14. On December 18, 2014 Global provided the two repair proposal's to Phillips & Jordan. Global also informed Phillips & Jordan that if the parties could not agree upon the cost to repair the Aircraft, the parties would be required to proceed with the appraisal process under paragraph 4 of Part III (Physical Damage Coverages) of the Policy, and each party would be required under the Policy to select an appraiser.

15. On or about January 12, 2015, Global and Phillips & Jordan agreed to proceed with an Appraisal under Part III of the Policy.

16. On or about January 12, 2015, Phillips & Jordan named its appraiser.

17. On or about January 22, 2015, Global named its appraiser.

18. On February 5, 2015, the two appraisers met and discussed the repair process and the cost to repair. Both Appraisers agreed that the Aircraft could be repaired but did not agree on the cost to repair.

5

19. Because the two appraisers could not agree on the cost to repair, Global informed Phillips & Jordan that an umpire needed to be appointed pursuant to the appraisal provisions of the Policy.

20. On February 27, 2015, Global informed Phillips & Jordan it was ready and willing to proceed with the appointment of an umpire to complete the appraisal process pursuant to the terms of the Policy, and Global designated an umpire.

21. On March 10, 2015, counsel for Phillips & Jordan notified counsel for Global that it would not agree to an appointment of an umpire and would not continue with the appraisal process.

## COUNT I – DECLARATORY JUDGMENT

22. Global incorporates paragraphs 1 through 21 of its Complaint as if fully set forth herein.

23. There is a justiciable controversy as Global asserts that, pursuant to the terms of the Policy an umpire should be appointed to determine the cost to repair the physical damage. Phillips & Jordan asserts that the Policy does not provide for the appointment of an umpire.

24. Speedy relief is necessary to preserve the rights of the parties.

25. The issue involved in this controversy is ripe for judicial determination. The facts relevant to whether the appraisal clause is valid and whether an umpire should be appointed are set forth herein. A decision by this Court would serve a useful purpose because it would settle the controversy between the parties; clarify the legal relations and interest of each of the parties. A declaration is the best and most efficient remedy under the circumstances of this case.

26. Global brings this action, pursuant to 28 U.S.C. § 2201, stating that there is an actual judiciable controversy between Global and Phillips & Jordan, and asks this Court to

6

declare the rights and legal obligations of the parties with respect to the appraisal provisions of the Policy and the appointment of an umpire.

WHEREFORE Global prays for this Court to declare the rights and obligations of the parties under the Policy of insurance described herein, and to enter its Judgment and Order finding, adjudging and declaring that:

1. The appraisal provisions of the Policy are valid and enforceable;

2. Phillips & Jordan should be compelled to participate in the appraisal process;

3. The two appraisers should appoint an umpire, and if the two appraisers cannot agree on an umpire, the Court will appoint an umpire;

4. Global is entitled to recover its costs incurred herein; and

5. Global is entitled to such other and further relief as the Court deems just and proper under the circumstances.

Respectfully submitted on this 11th day of March 2015.

BAKER, O'KANE, ATKINS
& THOMPSON, PLLP

_____
Trevor Sharpe, BPR#022281
2607 Kingston Pike, Ste. 200
Knoxville, TN 37919
Phone: 865.637.5600
Facsimile: 865.637.5608
tsharpe@boaltlf.com

&

7

DYSART TAYLOR COTTER
MCMONIGLE & MONTEMORE, P.C.

Robert W. Cotter     *Pro hac vice* (pending)
Matthew W. Geary     *Pro hac vice* (pending)
4420 Madison Avenue, Ste. 200
Kansas City, MO 64111
Phone: 816.931.2700
Facsimile: 816.931.7377
rcotter@dysarttaylor.com
mgeary@dysarttaylor.com

ATTORNEYS FOR PLAINTIFF
GLOBAL AEROSPACE, INC.