IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| GLOBAL AEROSPACE, INC., | ) | |
| | ) | |
| Plaintiff / Counter-Defendant, | ) | |
| | ) | |
| v. | ) | Case No. 3:15-cv-105 |
| | ) | |
| PHILLIPS & JORDAN, INC., | ) | District Judge Pamela L. Reeves |
| | ) | |
| Defendant / Counter-Plaintiff, | ) | Magistrate Judge C. Clifford Shirley |
| | ) | |
| v. | ) | |
| | ) | |
| AMERICAN ALTERNATIVE INS. CO., ET AL., | ) | |
| | ) | |
| Counter-Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF MOTION TO COMPEL APPRAISAL
AND STAY THIS LITIGATION PENDING APPRAISAL**

COMES NOW Plaintiff / Counter-Defendant Global Aerospace, Inc. ("Global"), and Counter-Defendants American Alternative Ins. Corp. ("AAIC"), American Commerce Ins. Co. ("ACIC"), National Indemnity Co. ("NICO"), Mitsui Sumitomo Ins. Co. of America ("Mitsui") and Tokio Marine America Ins. Co. ("Tokio Marine") (Global, AAIC, ACIC, NICO, Mitsui, and Tokio Marine are collectively referred to as "Movants") and for their suggestions in support of their motion to compel appraisal and stay this litigation pending appraisal state:

**I.      Summary**

This motion concerns whether the Court should order an appraisal based upon an appraisal clause in an insurance policy providing coverage for damage to a Beech Premier I Aircraft ("the Aircraft") owned by Phillips and Jordan, Inc. ("Phillips & Jordan"). The Aircraft sustained damage

while landing in Knoxville, TN when a tire blew on the left main landing gear. This resulted in damage to the left main landing gear and left wing.

The crux of the issue in this case is whether the Aircraft can be repaired and be returned to a FAA certified airworthy condition by repairing it with a serviceable (used) wing, or whether it must be repaired with a new wing. If the cost to repair includes a serviceable wing, the cost to repair will be less than the Aircraft insured value; and the Policy will provide coverage for the actual cost to repair. On the other hand, if the cost to repair includes a new wing, the cost to repair will exceed the Aircraft insured value, and Phillips & Jordan will be entitled to the full Aircraft insured value.

After the accident, Global obtained two estimates to repair the Aircraft, one from Emery Air and one from the Aircraft's manufacturer, Hawker Beechcraft.[1] Both facilities quoted, as well as stated, they would repair the Aircraft using a serviceable (used) wing from another Premier I aircraft, manufactured by Hawker Beechcraft. Each estimate totaled approximately $1 million. Both the Emery Air and Hawker Beechcraft quotes included all required inspections to return the Aircraft to service in compliance with FAA requirements. Phillips & Jordan demands that only a new wing manufactured by Hawker Beechcraft be used which will result in a cost to repair of over $3.7 million, thereby entitling them to payment of $3.5 million (the Insured Value of the Aircraft).

The determination of the cost to repair an aircraft is a technical endeavor, requiring specialized knowledge and compliance with FAA rules and regulations. As such, the Policy contains an appraisal clause which allows appraisers with specialized knowledge to determine the true cost to

---

[1] From the time the Aircraft was manufactured, the corporate and trade name of the Aircraft's manufacturer has changed though a series of mergers and acquisitions and a bankruptcy. To avoid confusion, the Aircraft's manufacturer is referred to as "Hawker Beechcraft."

repair, including whether the repair can be made with serviceable parts that comply with FAA regulations, and the manufacturer's specifications.

Phillips & Jordan initially agreed to the appraisal process, and Global and Phillips & Jordan appointed their respective appraisers, both knowledgeable aviation experts with aircraft repair experience. After the appraisers met, they could not agree on the cost to repair. Under the Policy Appraisal clause, if the appraisers cannot agree as to the cost to repair, they are required to appoint an umpire. Global and its appraiser proposed an umpire, however, Phillips & Jordan would not agree to continue the appraisal process by the appointment of an umpire.

Because the insurance policy contains an appraisal clause to resolve disputes regarding cost to repair, the Court should compel the parties to participate in an appraisal and stay this litigation pending the completion of the appraisal process.

**II.     Uncontroverted Facts[2]**

1. Phillips & Jordan purchased a certain Broad Horizons Aviation Insurance Policy, No. 15000291, for the policy period June 1, 2014 to June 1, 2015 (the "Policy"). A copy of the Policy is attached as Exhibit 1 to Global's Complaint and as Exhibit A, to Phillips & Jordan's Counterclaim.

2. Global issued the Policy as the managing agent for an insurance pool consisting of AAIC, ACIC, NICO, Mitsui, and Tokio Marine, whose interests are respectively set forth in the Policy. (Complaint Exhibit 1, Answer Exhibit A).

3. The Policy insured Phillips & Jordan's 2004 Beech Premier I airplane, N73PJ ("Aircraft") against physical damage to the Aircraft. (Complaint Exhibit 1, Answer Exhibit A).

---

[2] The uncontroverted facts are taken from Plaintiff's Complaint and Phillips & Jordan's Answer. The facts were either admitted by Phillips & Jordan or they were asserted by Phillips & Jordan in its Answer.

4. The Policy provides, in material part:

**LIMITS OF LIABILITY**
(APPLICABLE TO ALL PART III COVERAGES)

1. In the event of a ***total loss*** the Company shall pay the ***insured value*** of the ***scheduled aircraft*** less any applicable deductible whereupon the Company's liability as respects such ***scheduled aircraft*** shall terminate.

2. In the event of a ***partial loss*** the Company's liability shall not exceed the ***cost to repair*** the ***scheduled aircraft***, less any applicable deductible, but in no event shall the Company's liability for a ***partial loss*** exceed the amount for which the Company would be liable if the ***scheduled aircraft*** were a ***total loss***.

\* \* \*

4. **Appraisal.**

If [Phillips & Jordan] and the Company fail to agree as to the ***cost to repair*** the ***physical damage***, either may, within sixty (60) days after proof of loss is filed, demand an appraisal. In such event, [Phillips & Jordan] and the Company shall each select a competent appraiser, and the appraisers shall select a competent and disinterested umpire. The appraisers shall appraise the ***cost to repair*** the ***physical damage*** and failing to agree shall submit their differences to the umpire. An award in writing of any two (2) shall determine the ***cost to repair*** the ***physical damage***. [Phillips & Jordan] and the Company shall each pay its chosen appraiser and shall bear equally the other expenses of the appraisal and the umpire. The Company shall not be held to have waived any of its rights by any act relating to appraisal.

\* \* \*

*"Cost to repair"* means the sum of the cost, where necessary, of transporting new or damaged parts or of transporting the damaged ***scheduled aircraft, spare engine(s), spare part(s)*** or ***mechanics' tools*** to the place of repair and return to the place of accident or home airport or heliport, whichever is nearer, by the least expensive reasonable means and
(a)   if repairs are made by [Phillips & Jordan]
   (1) the actual cost of materials and parts of like kind and quality,
   (2) actual straight time wages paid for labor, and
   (3) reasonable overhead; or
(b)   if repairs are not made by [Phillips & Jordan], the actual cost of repairing the damaged property with materials and parts of like kind and quality with charges for labor at straight time rates.

* * *

*"Insured Value"* means:

(a) as respects any *scheduled aircraft* which is described in Item 4 of the Declarations:

the amount shown as part of the description of the aircraft; or

(b) as respects any *scheduled aircraft* which is a *newly acquired aircraft*:

(1) if purchased by [Phillips & Jordan], the actual cost of the aircraft to [Phillips & Jordan], or

(2) if leased to [Phillips & Jordan], the amount for which [Phillips & Jordan] is responsible as set forth in the lease,

provided, however, that sub-sections (b) (1) and (2) above are subject to the maximum allowable amount set forth in Item 3 of the Declarations as part of the Company's Limit of Liability for Coverage L.

                                        * * *

*"Partial Loss"* means *physical damage* which is not a *total loss*.

                                        * * *

*"Physical Damage"* means direct and accidental physical loss of or damage to the *scheduled aircraft, spare engine, spare part* or *mechanics' tools*, but does not include loss of use or any residual decrease in value after repairs have been made.

                                        * * *

*"Total Loss"* means *physical damage* for which the *cost to repair* equals or exceeds the *insured value* of the *scheduled aircraft*.

                                        * * *

5. The "Policy" states that the "Insured Value" of the Aircraft is $3,500,000. (Complaint ¶ 9, Answer ¶ 9).

6. On or about September 30, 2014, the Aircraft sustained damage to the left main landing gear and left wing. (Complaint ¶ 10, Answer ¶ 10).

7. On November 18, 2014, Phillips & Jordan filed a Proof of Loss, enclosing a letter dated October 30, 2014. The letter stated the repair costs were in excess of $3,700,000, and since the Aircraft has an "Insured Value" of $3,500,000, the Aircraft was a total loss. Phillips & Jordan made demand for payment in the amount of $3,500,000. (Complaint ¶ 11, Answer ¶ 11).

5

8. The repair costs in excess of $3,700,000 were based on the cost of a wing and landing gear attachment from Hawker Beechcraft, associated labor and services costs, travel costs, shipping costs, inspection costs, and miscellaneous costs. (Complaint ¶ 12, Answer ¶ 12).

9. Two alternate repair proposals were obtained. Both of these alternate repair proposals utilized a serviceable wing manufactured by Hawker Beechcraft with comparable flight hours and cycles as Phillips & Jordan's Aircraft rather than utilizing a new wing with zero flight hours and cycles. Emery Air, Inc., a FAA Class IV Repair Station and a Beechcraft and Williams (the manufacturer of the aircraft engines) authorized service center provided a repair proposal in the amount of $984,280.00. Hawker Beechcraft also provided a proposal installing a serviceable wing in the amount of $1,177,677. Both repair proposals were pursuant to the manufacturer's maintenance manual and included all requisite inspections to return the Aircraft to service in an airworthy condition. (Complaint ¶ 13, Answer ¶ 13, Phillips & Jordan denied much of this statement as a legal conclusion).

10. On December 18, 2014, two repair proposals were provided to Phillips & Jordan. Global also informed Phillips & Jordan that if the parties could not agree on the cost to repair the Aircraft, the parties would be required to proceed with the appraisal process under paragraph 4 of Part III (Physical Damage Coverages) of the Policy, and each party would be required under the Policy to select an appraiser. (Complaint ¶14, Answer ¶ 14).

11. On or about January 12, 2015, Phillips & Jordan named its appraiser. (Complaint ¶ 16, Answer ¶ 16).

12. On or about January 22, 2015, Global named its appraiser. (Complaint ¶17, Answer ¶ 17).

13. On February 5, 2015, the two appraisers met and discussed the repair of the Aircraft. (Complaint ¶ 18, Answer ¶ 18).

14. The two appraisers could not reach a compromise or agreement regarding the cost to repair the Aircraft. Because the two appraisers could not agree on the cost to repair, Global informed Phillips & Jordan that an umpire needed to be appointed pursuant to the appraisal provisions of the Policy. (Complaint ¶ 19, Answer ¶ 19).

15. On February 27, 2015, Global informed Phillips & Jordan it was ready and willing to proceed with the appointment of an umpire to complete the appraisal process pursuant to the terms of the Policy, and Global designated an umpire. (Complaint ¶ 20, Answer ¶ 20).

16. On March 10, 2015, counsel for Phillips & Jordan notified counsel for Global that it would not agree to an appointment of an umpire and would not continue with the appraisal process. (Complaint ¶ 21, Answer ¶ 21).

17. On or about April 9, 2015, Global paid Phillips & Jordan $989,535.00, which was the amount of the Emery repair proposal, plus $5,555.00 for shipping, handling, EPA and miscellaneous expenses.

### III.     Plaintiff's Claim Must Be Resolved Under the Policy's Appraisal Provision

In construing insurance policies, Tennessee courts apply the rules of contract construction because insurance policies are contracts. *McKimm v. Bell*, 790 S.W.2d 526, 527 (Tenn. 1990). "An insurance policy must be interpreted fairly and reasonably, giving the language its usual and ordinary meaning." *Naifeh v. Valley Forge Life Ins. Co.*, 204 S.W.3d 758, 768 (Tenn. 2006). Additionally, "insurance policies should be construed as a whole in a reasonable and logical manner." *Travelers Indem. Co. of Am. v. Moore & Assoc., Inc.*, 216 S.W.3d 302, 305–06 (Tenn. 2007).

"Under Tennessee law, an appraisal provision in an insurance policy is valid." *Bard's Apparel Mfg., Inc. v. Bituminous Fire & Marine Ins. Co.*, 849 F.2d 245, 249 (6th Cir.1988)

(*citing Hickerson v. German-American Ins. Co.*, 96 Tenn. 193, 33 S.W. 1041 (1896)). Appraisal clauses provide for "speedy and efficient resolution without recourse to the courts." *Merrimack Mut. Fire Ins. Co. v. Batts*, 59 S.W.3d 142, 150 (Tenn. App. 2001) (citation omitted). Furthermore, "[c]ourts regularly compel appraisal pursuant to such provisions." *J. Wise Smith & Assoc., Inc. v. Nationwide Mut. Ins. Co.*, 925 F. Supp. 528, 530 (W.D. Tenn. 1995) (citing *Middlesex Mut. Assurance Co. v. Clinton*, 38 Conn. App. 555, 662 A.2d 1319 (1995); *Childs v. State Farm Fire & Casualty Co.,* 899 F. Supp. 613 (S.D.Fla.1995)).

In a strikingly similar case, the court in *CNS Corp. v. Global Aerospace, Inc.*, No. 2:10CV18-JCH, 2010 WL 2978063 (E.D. Mo. July 23, 2010), ordered appraisal and stayed the litigation pending appraisal. In the *CNS* case, Global issued a Broad Horizon Aviation Insurance Policy to CNS, which is a similar policy form that was issued to Phillips & Jordan, with a virtually identical appraisal clause. In *CNS*, the aircraft at issue sustained damage when it slid off an icy runway. In the *CNS* case, the repair estimates for the plane were approximately $3.4 million, and the insured value of the plane was $5.5 million. The repair estimate included returning the aircraft "to a safe and airworthy condition." *Id.* at *2. CNS, the owner of the plane, insisted that the aircraft could not be repaired and claimed that the plane was a total loss and demanded the total insured value of the plane. Global then invoked the appraisal provision of the policy because the parties could not agree on the cost to repair.

CNS refused to participate in the appraisal process and filed suit against Global, alleging that the dispute was one of coverage and not the amount of the damages. CNS contended that "a complete repair is unobtainable as even Hawker Beechcraft, the manufacturer of the plane at issue, acknowledged the impossibility of restoring the plane to the point where its function, appearance, and value are substantially the same as they were immediately prior to the accident." *Id.*at 4. In

response, Global filed a motion to compel appraisal and stay the litigation. In compelling appraisal and staying the litigation pending appraisal, the court held that "[d]iminution in use, appearance, and/or value thus does not factor into the analysis, and so the dispute here (to the extent one still remains) centers around the 'cost to repair' under the Policy." *Id.* at *5. The court concluded that "[Global] thus is entitled to invoke the appraisal clause, absent any other bar to its application." *Id.* The court then stayed "the entire case pending completion of the appraisal process." *Id.* at *7.

The appraisal clause in Global's policy is valid under Tennessee law. There is no question that the dispute that is the subject of this litigation is a dispute over the "cost to repair," and, thus, is properly resolved by appraisal as required by the Policy. Furthermore, the method and cost to repair an aircraft, and ensuring that such aircraft is in compliance with FAA rules and regulations and is airworthy, is a technical and complicated process. The appraisal clause in the Policy permits qualified appraisers and an umpire to make such technical determinations when determining the cost to repair.

Here, the only issue is whether the Aircraft can be repaired and returned to an airworthy condition using a serviceable (used) wing, or whether it must be repaired with a new wing. This is clearly an issue to be considered and determined under the appraisal provision of the Policy. The Policy's appraisal provision expressly provides that if Phillips & Jordan and Global fail to agree on the "cost to repair," either one can demand that the cost to repair be set by appraisal. The appraisal provision then sets forth a procedure whereby each party chooses an appraiser, and if the appraisers cannot agree on the cost to repair, the appraisers shall select an umpire and submit their differences to the umpire. An award of any two of the appraisers or umpire shall determine the cost to repair.

Phillips & Jordan agreed to proceed with the appraisal process under the Policy, and Phillips & Jordan and Global each selected an appraiser. The appraisers met to determine if they could resolve the issue as to the cost to repair. When the appraisers were unable to agree as to the cost to repair, specifically as to the utilization of a new or serviceable wing, Global proposed an umpire pursuant to the appraisal clause in the Policy. Phillips & Jordan then refused to proceed with the appraisal process under the Policy.

Given that appraisal provisions in property insurance policies are clearly enforceable under Tennessee law, and the dispute over the "cost to repair" the loss is subject to appraisal, the Court should compel Phillips & Jordan to participate in the appraisal process.[3]

### IV. The Court Should Stay This Litigation

"The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706, 117 S. Ct. 1636, 137 L.Ed.2d 945 (1997). The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North American Co.*, 299 U.S. 248, 254-55 (1936). "In ruling upon a motion for stay, the Court is required to weigh the burden of proceeding with discovery upon the party from whom discovery is sought against the hardship which would be worked by a denial of discovery." *Bolletino v. Cellular Sales of Knoxville, Inc.*, No. 3:12–CV–138, 2012 WL 3263941 (E.D. Tenn. Aug. 9, 2012) (citations omitted). "Additionally, the Court is required to take into account any societal interests which are implicated by either proceeding or postponing discovery."

---

[3] The fact that Phillips & Jordan selected an appraiser and began the appraisal process before suddenly refusing to proceed, should estop Phillips & Jordan from now objecting to the appraisal process. *See e.g. Mitchell v. Aetna Cas. & Sur. Co.*, 579 F.2d 342, 348 n.4 (5th Cir. 1978) (insured, who was represented by counsel and participated in appraisal without protest, is estopped from repudiating the appraisal process).

*Id.* Furthermore, in deciding whether to grant a stay, courts should consider "two variables: the scope of the stay, and the reasons for ordering it.*" Hines v. D'Artois*, 531 F.2d 726, 733 (5th Cir. 1976).

In this case, Global's proposed stay of this litigation is limited: it will remain in force only during appraisal, and will be lifted after the appraisal is completed to the extent that anything remains to be litigated. This brief interruption will not prejudice Phillips & Jordan. The reason for the proposed stay is compelling: if the parties' dispute is resolved by appraisal, there will be no need for litigation.

In addition to the court in the *CNS* case, a number of other courts have issued such orders in cases where courts have compelled appraisal. *See e.g., Springmeadows Condominium Assn. v. American Family Mut. Ins. Co.*, No. 14–cv–02199–CMA–KMT, 2014 WL 7005106 (D. Colo. Dec. 9, 2014) (staying case pending appraisal); *Woodward v. Liberty Mut. Ins. Co.,* No. 3:09–CV–0228–G, 2010 WL 1186323 (N.D. Tex. March 26, 2010) (granting motion to compel appraisal and staying case until appraisal was completed); *Newman v. Lexington Ins. Co.*, No. 06-4668, 2007 WL 1063578 *4 (E.D. La. Apr. 4, 2007) (granting motion to compel appraisal and stay litigation pending appraisal); *Detroit City Dairy, Inc. v. United Nat'l Ins. Co.*, No. 07-CV-11228-DT, 2007 WL 3333020 *3 (E.D. Mich. Nov. 8, 2007) (granting motion to stay and compel appraisal).

The appraisal process will likely resolve or significantly limit the issues remaining in this lawsuit. Once the cost to repair is determined, the parties' rights and liabilities under the Policy will be more clearly defined. Allowing discovery to proceed simultaneously with the appraisal, where the appraisal would likely resolve Phillips & Jordan's claim and terminate this litigation, would make no sense. Without a stay, the parties will incur substantial time and expense and the

Court will likely be required to adjudicate numerous discovery disputes, all of which will be unnecessary if the dispute is resolved by appraisal.

For the foregoing reasons, Movants pray that the Court enter an order compelling appraisal and staying this case pending appraisal.

Respectfully submitted on this 21st day of May 2015.

                      BAKER, O'KANE, ATKINS
                      & THOMPSON, PLLP


                      */s/ Trevor L. Sharpe*
                      Trevor L. Sharpe      BPR#022281
                      2607 Kingston Pike, Ste. 200
                      Knoxville, TN 37919
                      Phone: 865.637.5600
                      Facsimile: 865.637.5608
                      tsharpe@boaltlf.com


                      Robert W. Cotter    *Pro hac vice*
                      Matthew W. Geary   *Pro hac vice*
                      DYSART TAYLOR COTTER
                      MCMONIGLE & MONTEMORE, P.C.
                      4420 Madison Avenue, Ste. 200
                      Kansas City, MO 64111
                      Phone: 816.931.2700
                      Facsimile: 816.931.7377
                      rcotter@dysarttaylor.com
                      mgeary@dysarttaylor.com
                      ATTORNEYS FOR PLAINTIFF / COUNTER-
                      DEFENDANT GLOBAL AEROSPACE, INC.;
                      COUNTER-DEFENDANTS AMERICAN
                      ALTERNATIVE INS. CORP.; AMERICAN
                      COMMERCE INS. CO.;  TOKIO MARINE
                      AMERICA INS. CO.; AND MITSUI SUMITOMO
                      INS. CO. OF AMERICA

James D. Kay, Jr. (#11556)
John J. Griffin, Jr. (#15446)
Benjamin E. Goldammer (#26328)
Michael A. Johnson (#30210)
KAY, GRIFFIN, ENKEMA & COLBERT, PLLC
222 Second Avenue North
Suite 340M
Nashville, TN 37201
john.griffin@kaygriffin.com
ben.goldammer@kaygriffin.com
jim.kay@kaygriffin.com

CO-COUNSEL FOR DEFENDANT
MITSUI SUMITOMO INS. CO. OF AMERICA

## **CERTIFICATE OF SERVICE**

      I hereby certify that I have caused a true and correct copy of the foregoing to be served via CM/ECF or United States mail, postage pre-paid, on this 21st day of May 2015, upon the following:

Brigid M. Carpenter
BAKER DONELSON BEARMAN
CALDWELL & BERKOWITZ, P.C.
211 Commerce Street, Suite 800
Nashville, Tennessee 37201
bcarpenter@bakerdonelson.com

Joseph L. Pellis II, Esq.
Daniel R. Lavoie, Esq.
PELLIS LAW GROUP, LLP
901 Warrenville Road, Suite 205
Lisle, Illinois 60532
jpellis@pellislaw.com
dlavoie@pellislaw.com

*Attorneys for Defendant/Counter-Plaintiff*
*Phillips and Jordan, Incorporated*

                                                     /s/ Trevor L. Sharpe